**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.**

ASHLEY M. LAW, an individual, on
behalf of herself and all others similarly situated,

    Plaintiff,

v.                                                                             **COMPLAINT - CLASS ACTION**

DOMINO'S PIZZA, LLC,
a foreign limited liability company,

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND
INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE
CONSUMER PROTECTION ACT
JURY DEMAND**

    1.    "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted).  In an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

2. In sum, Defendant has sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

3. In order to redress these injuries, Plaintiff, on behalf of herself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has sent unwanted text messages in a manner which violates the right of privacy of the putative class members. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees. All allegations contained herein are based upon information and belief of Plaintiff or the investigative efforts of the undersigned counsel.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.  Venue in this District is proper because Plaintiff resides here and Defendant sends text messages to individuals residing within this District.

## PARTIES

5.  Plaintiff, ASHLEY M. LAW (hereinafter, "Ms. Law" or "Plaintiff"), is a natural person, and citizen of the State of Florida, residing in Miami-Dade County, Florida.

6.  Defendant, DOMINO'S PIZZA, LLC (hereinafter, "Domino's Pizza" or "Defendant"), is a foreign limited liability company, headquartered in Ann Arbor, Michigan, with more than 10,000 corporate and franchised stores in 70 countries. Domino's Pizza is the second largest pizza chain in the United States, and largest in the world with global retail sales of over $7.4 billion in 2012.

## A BRIEF OVERVIEW OF TEXT MESSAGING

7.  In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

8.  One of the newest types of such bulk marketing is to advertise through Short Message Services.  The term "Short Message Service" or "SMS" describes a

messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

9. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

10. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

11. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

12. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶ 10).

15. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

16. The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In re SoundBite*

*Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

17. Many companies have websites which promote recurring "alert" programs in which text messages are sent *en masse* automatically to persons within a subscribed database. A consumer specifies the content which he or she wishes to receive within the parameters set by either the consumer or the content provider.

18. The average opt-out rate for retail SMS marketing campaigns is 3.7% percent per thousand text messages sent. Source: http://www.tatango.com/blog/average-opt-out-rate-for-retail-sms-marketing-campaigns/ (last accessed August 13, 2013).

19. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed August 13, 2013).

**FACTUAL ALLEGATIONS SPECIFIC TO MS. LAW**

20. On or about July 13, 2013, Plaintiff subscribed to receive text message alerts (i.e. "text-message deals" or "text deals") from Defendant by entering her phone number on the Domino's Pizza website, located at the following internet address: https://order.dominos.com/en/pages/customer/opt-in.jsp

6

21. The language on the aforesaid website reads as follows:

### TEXT-MESSAGE DEALS

Plug in your mobile number to receive text deals.

Primary Phone Number: ☐

**By subscribing, you consent to receiving up to 6 SMS messages per month from 366466. Domino's will not charge you for text messages; however standard message and data rates may apply. To opt out of Domino's text messaging program, send the word STOP to DOMINO (366466) at any time.**

For help or information on this program send **HELP** to 366466.

For additional assistance, contact customer service at 734-930-3030 or you may click here to send us an email.

Supported Carriers: AT&T, Sprint, Nextel, Boost, Verizon Wireless, US Cellular®, T-Mobile®, Virgin Mobile USA, Alltel and others.

To read our privacy policy, click here.

22. Approximately two weeks after entering her cellular phone number on Defendant's website, Plaintiff received a text message advertisement on July 27, 2013 from short code 366466 promoting Domino's Pizza. The July 23, 2013 message read as follows:

```
Any   2   or   more   Domino's   Med   2-Top
Pizza/Sandwhich/Stuffed   Chessy   Bread/8pc
Chicken/Pasta in a Dish @ $5.99 ea. Use code
9193. http://bit.ly/18AlfvO STOP 2 opt out
```

23. After receiving the aforementioned message, Plaintiff had second thoughts about her subscription and that same day texted back "STOP" to short

7

code 366466 whereupon she received a confirmatory opt-out message from Defendant, which stated:[1]

```
Dominos Pizza You have opted out of Dominos
alerts...You will not receive any more msgs.
Please visit http:m.dominos.com for info.
```

24.     On or about August 3, 2013, in violation of the Telephone Consumer Protection Act,[2] Defendant sent Plaintiff yet another text message advertisement from short code 366466.  This post-revocation message contained the following information:

```
50% off menu price of any Domino's Pizza when
ordered online through 8/4/13. Use code 9413
http://bit.ly/16bBlKn STOP to opt out
```

25.     According to Defendant's profile page on the Facebook website, there are more than 8,573,971 people who "like" the pizza chain; similarly, according to Defendant's profile page on the Twitter website, Domino's Pizza has more than 289,219 followers.

26.     As the result of a previous mobile marketing effort conducted by Defendant, more than 140,000 people download the Domino's Pizza Android mobile phone application, more commonly referred to as an "app."  Source:

---

[1] Plaintiff does not allege that the confirmatory opt-out text message was in any way unlawful – only the subsequent text message(s) sent by Defendant thereafter.

[2] *See In re SoundBite* at ¶ 12 ("A consumer's prior express consent, therefore, is limited to a confirmation text message which confirms receipt of the consumer's opt-out request, and does not contain marketing, solicitations, or an attempt to convince the consumer to reconsider his or her opt-out decision…. Moreover, after sending an opt-out request, no text messages other than one confirmation of the opt-out request is encompassed within the consumer's prior express consent.").

http://www.pbsmartessentials.com/get-customers/mobile-marketing-case-study-dominos/ (last accessed August 13, 2013).

27. Given the substantial likelihood that tens of thousands of people have subscribed to receive text message alerts from Domino's Pizza, there is no practical way to send text messages *en masse* without the use of an automatic telephone dialing system.

28. Based upon an average opt-out rate of 3.7% percent, a class of more than forty people would exist assuming at least 1,082 people had previously subscribed to the Domino's Pizza text message alert service over the last four years. *See generally, Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553-57 (11th Cir. 1986) (noting that more than 40 generally suffices and holding that 240 certainly did).

29. With respect to another text message alert service promoted by Defendant, there is evidence of a similar problem having occurred. On a popular internet sounding board, one person posted the following:[3]



**Horik**

2012-01-13 14:50:21

- Text Message ID: 96000 / 960-00
- Company : Dominos

---

[3] Source: http://www.smswatchdog.com/96000 (last accessed August 13, 2013).

- Optout success: No

  I replied STOP and 8 minutes later, received another text offering pizza deals from Dominos. Very frustrated.

30.     Upon information and belief, all members of the putative class received messages which were sent *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the device used by Defendant to send the aforesaid text messages had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers or would otherwise qualify as a "predictive dialer."

## CLASS ACTION ALLEGATIONS

31.     This action is brought on behalf of a class consisting of:

All persons in the United States who unsubscribed to receive text messages from Domino's Pizza and were subsequently sent text message advertisements from Defendant (or any party on behalf of Defendant) to their cellular telephone wherein said text messages were sent using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator during the four year period prior to the filing of the complaint in this action through the date of certification.[4]

32.     Excluded from the Class are Defendant, their legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest.  Also excluded from the Class is the Judge to whom this case is assigned,

---

[4] The members of the putative class may be referred to herein as simply "the Class."

the Judge's immediate family, and Plaintiff's counsel and its employees. Plaintiff reserves the right to amend the above-stated Class definition based upon facts learned in discovery.

33. Plaintiff alleges on information and belief based upon the Defendant's use of mass text messages that the class is so numerous that joinder of all members of the class is impractical. There are in all likelihood several thousand individuals in the Class as previously defined herein.

34. There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual and/or legal issues common to each class member are as follows:

    (a) Whether Defendant's conduct is governed by the TCPA?

    (b) Whether the text message advertisements sent by Defendant after Plaintiff unsubscribed violated the TCPA?

    (c) Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

    (d) Whether Defendant should be enjoined from engaging in such conduct in the future?

35. Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

36. Plaintiff will fairly and adequately protect the interests of the class. She has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this action.

37. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

> (1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.
>
> (2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

38. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

39. Ms. Law requests certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

40. Plaintiff incorporates Paragraphs 1 through 39.

41. Defendant sent unwanted text messages to Plaintiff and the members of the putative class using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

42. The unwanted calls (i.e. text messages sent after opting out of the Domino's text message alert service) were made without the prior express consent of the parties.

43. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class, and against Defendant for:

    (a)    An order certifying this case to proceed as a class action;

    (b)    Statutory damages at $500 dollars per call for negligent violations of the TCPA;

    (c)    An injunction requiring Defendant to cease all communications in violation of the TCPA;

    (d)    Reasonable attorney's fees and costs; and

    (e)    Such further relief as this Court may deem appropriate.

## COUNT II
## WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

44.    Plaintiff incorporates Paragraphs 1 through 39.

45.    Defendant sent unwanted text messages to Plaintiff and the members of the putative class using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

46.    The unwanted calls (i.e. text messages sent after opting out of the Domino's text message alert service) were made without the prior express consent of the parties.

47.    The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class, and against Defendant for:

    (a)    An order certifying this case to proceed as a class action;

    (b)    Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

  (c) An injunction requiring Defendant to cease all communications in violation of the TCPA;

  (d) Reasonable attorney's fees and costs; and

  (e) Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 13th day of August, 2013.

      Respectfully submitted,

      By:/s/ *Scott D. Owens*
      Scott D. Owens, Esq.
      *Attorney for Plaintiff*
      Florida Bar No. 0597651

      SCOTT D. OWENS, P.A.
      664 E. Hallandale Beach Blvd.
      Hallandale Beach, Florida 33009
      Telephone: 954-589-0588
      Facsimile: 954-337-0666
      scott@scottdowens.com